IN THE UNITED STATES DISTRICT COURT
FOR MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MONICA SCOTT HINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CIVIL ACTION NO. |
| v. | ) |
| | ) |
| HYUNDAI MOTOR | ) |
| MANUFACTURING ALABAMA, | ) |
| LLC, | ) |
| | ) |
| | ) PLAINTIFF DEMANDS |
| Defendant. | ) TRIAL BY STRUCK JURY |

## COMPLAINT

### JURISDICTION AND VENUE

1. This Complaint seeks legal and equitable relief to redress Defendant's violations of Plaintiff rights secured by the following:

   a. The Americans with Disabilities Act, as amended ("ADA" and "ADAAA"); 42 U.S.C. § 12101, *et seq.*, and the Civil Rights Act of 1991, 42 U.S.C. § 1991, 42 U.S.C. § 1981a.

2. Federal subject matter jurisdiction is proper pursuant to the following:

   a. 28 U.S.C. §§ 1331, 1332, 1343 and 1367; and

1

b.     42 U.S.C. § 2000e-5(f)(3).

3. Venue lies within the Middle District of Alabama under 28 U.S.C. § 1391.

## PARTIES

4. MONICA SCOTT HINSON (hereinafter "Plaintiff") brings this action based on the illegal employment practices by Defendant Hyundai Motor Manufacturing Alabama, LLC. Plaintiff is a resident of Montgomery County, Alabama, and is over the age of nineteen (19). Plaintiff was employed by Defendant Hyundai Motor Manufacturing Alabama, LLC, in Montgomery, Alabama, at all times relevant to this Complaint.

5. HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC (hereinafter "Defendant" or "HMMA") is a foreign limited liability company conducting business in Montgomery County, Alabama. HMMA is an employer as that term is defined under the ADA and ADAAA.

## NATURE OF ACTION

6. This is an action to redress grievances resulting from Defendant HMMA's unlawful employment practices, including violations of the ADA and ADAAA.

7. Plaintiff seeks declaratory and injunctive relief, back pay, front pay, an

award of compensatory damages, punitive damages, damages for emotional distress, attorney's fees, costs, interest, and any and all such other relief the trier of fact may assess.

## ADMINISTRATIVE PROCEDURES

8. On August 17, 2021, within 180 days of learning of the acts of discrimination of which she complains, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") alleging disability discrimination under the ADA and ADAAA. (*See* **Exhibit A**).

9. On June 13, 2022, the EEOC issued Plaintiff a Notice of Right to Sue which was received by Plaintiff on or about July 6, 2022. (*See* **Exhibit B**).

10. Plaintiff has exhausted all administrative remedies and satisfied all prerequisites for bringing this action.

## STATEMENT OF FACTS

11. Plaintiff is a 52-year-old African American female.

12. Plaintiff began her employment with Defendant HMMA in Montgomery, Alabama, on June 6, 2005, as a Production Team Member.

13. Plaintiff worked in the same rotational area for 16 years while receiving good performance reviews.

14. HMMA Production Team Members ("Team Members") are

responsible for performing a number of jobs in their rotational area.

15. Plaintiff's rotational area on the production line utilized an Automatic Guided Vehicle (hereinafter "AGV"), a moving platform which Team Members, including Plaintiff, had to step on and off for some of the processes on the production line.

16. Plaintiff has a permanent neurological condition that resulted in permanent neuropathy in her legs.

17. Since 2012, Plaintiff has had permanent physical restrictions from her physician to avoid repetitive stepping up and down from the moving AGV platform throughout the workday.

18. Defendant accommodated Plaintiff's restrictions, and Plaintiff was not required to step on and off of the AGV in her rotational area. Defendant assigned Plaintiff those job duties that did not involve stepping on and off of the AGV.

19. HMMA management specifically advised Plaintiff on multiple occasions that as long as she was capable of performing four of the ten jobs in her rotational area, she was "good."

20. Despite her physical restrictions, Plaintiff was at all times capable of performing eight of the ten jobs on her line.

21. Plaintiff's rotational area utilized 12 Team Members. Only two Team

4

Members, including Plaintiff, had physical restrictions preventing them from stepping onto the moving AGV, which left ten Team Members capable of handling those responsibilities.

22. HMMA management instructed Plaintiff to provide updated medical restrictions "when necessary." Plaintiff provided such updates on April 25, 2016, and November 13, 2020.

23. Defendant did not interrupt or fail to honor Plaintiff's accommodations for ten years.

24. On April 28, 2021, Plaintiff delivered updated accommodation documentation from her physician to HMMA's Medical Department. The restriction was worded in the same fashion as all of Plaintiff's prior documentation.

25. Defendant denied Plaintiff's request for accommodations, despite the restrictions for Plaintiff's neuropathy remaining the same. Plaintiff's badge was turned off restricting her access from her work area.

26. Defendant told Plaintiff she was not permitted to return to work until she obtained a revised request with additional information from her physician.

27. With regard to the language of her restrictions, HMMA Safety Team Member Brandon Evans (hereinafter "Evans") told Plaintiff, "I need an action word."

28. At no time did Defendant or any of its agents or representatives tell Plaintiff that the restriction needed to have specific inch measurements or other particulars.

29. Plaintiff's physician never provided measurements with regard to how far Plaintiff could step up and down because that was not an aspect of Plaintiff's restriction; Plaintiff's medical condition stemmed from stepping consistently on and off of the moving AGV, which caused Plaintiff to experience excruciating and almost crippling pain. Plaintiff had no issue stepping up and down from a still, stable platform.

30. Plaintiff had to make an appointment with her physician and pay an out-of-pocket co-payment to obtain a re-worded restriction according to Defendant's vague instructions. Plaintiff then presented the revised restriction to HMMA.

31. HMMA told Plaintiff that the updated language of her restriction was still insufficient, and again told Plaintiff that she could not return to work until she obtained revised restrictions with additional information from her physician.

32. Between April 28, 2021 and June 8, 2021, Plaintiff had to make a total of five appointments with her physician to amend the wording of her restrictions. Plaintiff's physician did not accept walk-ins, so Plaintiff had to schedule appointments days or weeks in advance and wait to be seen so her accommodation

request could be adjusted.

33. During this time, Defendant refused to grant Plaintiff permission to return to work, despite Plaintiff's repeated attempts to do so.

34. HMMA Team Relations Team Member Kim Abrams told Plaintiff to call The Hartford and apply for Family Medical Leave Act ("FMLA") leave and short-term disability. The Hartford is HMMA's third party administrator for FMLA claims and short-term disability for all of its Team Members.

35. Plaintiff called The Hartford on May 11, 2021, and advised of the reality of her situation: Plaintiff was able to work but was not being allowed to work by HMMA because language of her physical restrictions.

36. Plaintiff did not want to fraudulently assert to The Hartford that she was incapable of working. As such, The Hartford did not provide short-term disability to Plaintiff.

37. The final document submitted by Plaintiff on June 8, 2021 (a form given to Plaintiff by Evans) was signed by Plaintiff's physician and notated that HMMA should contact her office with any questions. Defendant did not contact Plaintiff's physician.

38. Defendant concluded from the June 8, 2021 paperwork that it was no longer going to accommodate Plaintiff's medical condition and denied Plaintiff the

opportunity to return to work due to her disability.

39. On July 22, 2021, Plaintiff returned to HMMA and met with Team Relations Manager Will Ware (hereinafter "Ware") and Safety Assistant Manager Keith Boiling (hereinafter "Boiling") to inquire about her restriction paperwork and the status of her job. She was told that HMMA did not have any work for her.

40. Plaintiff asked if she was being terminated. Ware said, "I don't want to say anything to get anyone in trouble," and Boiling replied, "I can't speak on that." Plaintiff then departed from the HMMA campus.

41. Plaintiff called Safety Manager Orlando Harris (hereinafter "Harris") and left a voicemail message inquiring about her restriction paperwork and the status of her job. Harris never responded to her inquiry, nor did anyone from the HMMA Safety Department.

42. HMMA never gave Plaintiff a clear answer in response to Plaintiff's direct inquiries about her restriction paperwork and the status of her job.

43. On August 19, 2021, HMMA mailed Plaintiff a letter terminating her employment.

44. HMMA terminated Plaintiff's employment because of her disability or because they perceived Plaintiff to have a disability.

## COUNT ONE
## ADA/ADAAA – FAILURE TO ACCOMMODATE
## AGAINST HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC

45. Plaintiff realleges paragraphs 11-44 as if fully set forth herein.

46. Plaintiff has an actual or perceived disability.

47. Plaintiff's physician provided Defendant with Plaintiff's work restrictions and requested accommodations under the ADA/ADAAA, which was honored by Defendant from 2012 until April 28, 2021.

48. Plaintiff provided updated information to Defendant regarding her work restriction under the ADA/ADAAA on April 28, 2021.

49. Defendant denied Plaintiff's accommodation request and the five revised requests Plaintiff provided between April 28, 2021 and June 8, 2021, and refused to allow Plaintiff to return to work from April 28, 2021 until it terminated her employment on August 19, 2021.

50. As a proximate result of Defendant HMMA's unlawful conduct, Plaintiff suffered emotional distress, loss of income and other employment-related benefits.

51. Plaintiff seeks declaratory and injunctive relief, award of lost wages and benefits, back pay, front pay, compensatory damages, punitive damages, costs, interest, attorney's fees, and such other or further relief the trier of fact may assess.

## COUNT TWO
## ADA/ADAAA – TERMINATION
## AGAINST HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC.

52. Plaintiff realleges paragraphs 11-44 as if fully set forth herein.

53. Plaintiff has an actual or perceived disability.

54. Plaintiff's physician provided Defendant with Plaintiff's work restrictions and requested accommodations under the ADA/ADAAA, which was honored by Defendant from 2012 until April 28, 2021.

55. Plaintiff provided updated information to Defendant regarding her work restriction under the ADA/ADAAA on April 28, 2021.

56. Defendant denied Plaintiff's accommodation request and the five revised requests Plaintiff provided between April 28, 2021 and June 8, 2021, and refused to allow Plaintiff to return to work from April 28, 2021 until it terminated her employment on August 19, 2021.

57. HMMA terminated Plaintiff's employment because she had an actual or perceived disability.

58. As a proximate result of Defendant HMMA's unlawful conduct, Plaintiff suffered emotional distress, loss of income and other employment-related benefits.

59. Plaintiff seeks declaratory and injunctive relief, award of lost wages

and benefits, back pay, front pay, compensatory damages, punitive damages, costs, interest, attorney's fees, and such other or further relief the trier of fact may assess

WHEREFORE, Plaintiff Monica Scott Hinson respectfully requests this Court:

A.  Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them from discriminating against employees because who have an actual or perceived disability, and from denying reasonable accommodations to persons with disabilities;

B.  Order Defendant HMMA to institute and carry out policies, practices, and programs that provide equal provisions and employment opportunities for all employees, and which eradicate the efforts of past and present unlawful employment practices, including implementing a policy against discrimination based on disability status;

C.  Order Defendant to make Plaintiff whole by providing reinstatement, back pay, front pay, costs, interest, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, compensatory and punitive damages;

D.  Award Plaintiff compensatory and punitive damages;

E.   Award Plaintiff costs and expenses herein, including reasonable attorneys' fees; and

F.   Award such other and further relief this Court deems necessary and proper.

### PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES

Respectfully submitted,

_____
Kenneth D. Haynes (ASB-6190-h36k)
Attorney for Plaintiff Monica Scott Hinson

**OF COUNSEL:**
**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama  35226
Phone:  (205) 879-0377
Fax:    (205) 879-3572
Email:  kdhaynes@haynes-haynes.com

### PLEASE SERVE DEFENDANT BY CERTIFIED MAIL:

DEFENDANT'S ADDRESS
**Hyundai Motor Manufacturing Alabama, LLC**
**700 Hyundai Blvd**
**Montgomery, AL 36105**