IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MONICA SCOTT HINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:22-cv-530-ECM |
| | ) | [WO] |
| HYUNDAI MOTOR MANUFACTURING | ) | |
| ALABAMA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Now pending before the Court is a motion for summary judgement (doc. 24) filed by Defendant Hyundai Motor Manufacturing Alabama, LLC ("Hyundai") on September 27, 2023; a motion to exclude (doc. 41) filed by Plaintiff Monica Hinson ("Hinson") on October 18, 2023; and a motion to strike (doc. 43) filed by Hyundai on October 25, 2023. The motions are fully briefed and with the benefit of oral argument, are due to be ruled on.

In her complaint, Hinson brought two counts against Hyundai under the Americans with Disabilities Act ("ADA"), as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"): failure to accommodate (Count I) and unlawful termination (Count II). (Doc. 1).

For the reasons that follow, Hyundai's motion for summary judgment (doc. 24) is due to be DENIED in part and GRANTED in part; Hinson's motion to exclude (doc. 41) is due to be DENIED as moot; and Hyundai's motion to strike (doc. 43) is due to be DENIED.

# I. JURISDICTION

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

# II. LEGAL STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting FED. R. CIV. P. 56(a)). "[A] court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016). However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018). If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* The burden

then shifts to the non-moving party to establish, by going beyond the pleadings, that a genuine issue of material fact exists. *Id.* at 1311–12.

The Court construes the facts in the light most favorable to the non-movant plaintiff and draws all reasonable inferences in her favor. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party' and 'resolve all reasonable doubts about the facts in favor of the non-movant.' Moreover, the court must avoid weighing conflicting evidence or making credibility determinations." (citations omitted)).

## III. FACTS

The facts, viewed in a light most favorable to the non-movant, are as follows:[1]

Hinson was hired by Hyundai in June 2005 as a production team member on its assembly line. (Doc. 25-1 at 5). After several years in this role, Hinson began experiencing medical issues. As the Court understands the medical evidence, these issues largely stemmed from concentric disc bulges at L3-4 and L4-5 in Hinson's spine. (*See* doc. 33-5 at 19). From December 2012 until 2015, Hyundai accommodated Hinson's restrictions associated with this condition by restricting Hinson from processes on the line which involved stepping on and off the automated guided vehicle ("AGV"). (*See* doc. 28-1 at 2; doc. 33-5 at 17–18; doc. 28-5; doc. 28-7 at 2). For instance, on or about April 24, 2013,

---

[1] The parties used a format of listing facts and then responding to those facts as "denied" or "admitted" which is neither required nor desired by this Court. Despite the format adopted by the parties, the Court has set forth a narrative summary of the facts which, while not exhaustive of the exchange of documents and communications between the parties or the medical documentation in the record, appear to the Court to be the facts relevant to the pending motions by Hinson and Hyundai.

Hinson delivered a medical report to Hyundai's medical clinic which indicated that Hinson's lumbar MRI showed concentric disc bulges at L3-4 and L4-5. (Doc. 33-5 at 19). Hinson's doctor recommended that she stop performing the "centerpipe process," which involves stepping on and off the AGV. (Doc. 33-5 at 19; Doc. 28-1 at 2). These restrictions were accommodated by Hyundai. (Doc. 28-1 at 2).

Such accommodations came to a halt in July 2015 when Hinson's team leader assigned her to work on the AGV. (Doc. 28-7 at 1). Concerned, Hinson visited the onsite medical clinic and explained that, as a result of her sciatic nerve issue, she had a permanent restriction for stepping on and off the AGV. The clinic told Hinson that she needed a doctor's note which identified her physical limitations rather than restrictions related to a process at work. (Doc. 28-7 at 1). The next day, Hinson delivered a physician's note to Hyundai which stated: "P[atien]t restricted from stepping off [and] on AGV until further evaluation with NCV/EMG. Neuro testing on Aug 26th 2015." (Doc. 28-8; Doc. 33-5 at 15). The restrictions were accommodated (doc. 28-1 at 2) and Hinson submitted subsequent notes to continue the restrictions. (Docs. 28-9 & 28-10). But on September 10, 2015, Hyundai advised Hinson that she needed to bring in new paperwork which describes a "specific physical limitation instead of [] a particular process." (Doc. 28-11). Hyundai delivered a letter to Hinson the following day which told her it would no longer accommodate her restriction of stepping on and off the AGV and needed a restriction based on a physical limitation. Hinson was also reminded that the safety department will usually "only accommodate restrictions for 30 days" and to take that into consideration when

bringing in updated duty status reports. (Doc. 28-12).  Nonetheless, Hyundai continued to accommodate the restrictions. (Doc. 28-1 at 3).

Finally, on December 21, 2015, Hinson delivered a letter from her doctor to Hyundai stating that she was being treated for "chronic lumbar L5 S1 nerve root lesion," and provided a physical limitation rather than a process-based restriction. (Doc. 28-13). Hyundai accepted this note. (Doc. 28-1 at 3).

In April 2016, Hinson updated her restrictions by submitting another letter from her doctors identical to the one she submitted on December 21, 2015, except for a request that the accommodation be provided "[f]or the next six months." (Doc. 28-15).   Hyundai accommodated these restrictions. (Doc. 28-14).  Once more, Hinson provided a similar note and Hyundai accommodated the restrictions in October 2016. (Docs. 28-16 & 28-17). At this point Hinson alleges that, "[d]espite Hyundai's statements that Hinson's accommodation would be for 6 months, Hyundai continued to accommodate Hinson's impairment without any further doctor's notes for four years." (Doc. 40 at 17).  Hyundai conceded this fact at oral argument.

On April 2, 2019, Hinson suffered an on the job injury to her right shoulder (doc. 28-18) and was seen at the onsite medical clinic several times over the ensuing months. Consequently, Hinson had right rotator cuff repair surgery on August 29, 2019. (Doc. 28-19 at 3).  Hinson returned to work on January 6, 2020 (*id.* at 3–4) and was released to full duty from her right shoulder injury on September 22, 2020 (*id.* at 1).

In November of 2020, Hinson delivered a note from Dr. Rosa Bell to Hyundai's medical clinic, at Hyundai's request, which reiterated the nature of Hinson's impairment

and recommended that Hinson "avoid repetitive stepping up and down throughout the day at work since this can exacerbate her Neurological condition." (Doc. 28-20; doc. 33-5 at 9). These restrictions were accommodated by Hyundai. (Doc. 28-1 at 4).

Additionally, Hinson reported pain in her left shoulder throughout late 2020 into 2021. (Doc. 31-19 at 1–4). Eventually, a physician determined that Hinson needed physical therapy and would likely require surgery in the future. (Doc. 31-22 at 13). On March 9, 2021, Hinson was diagnosed with a partial thickness tear in her left rotator cuff. (Doc. 31-22 at 12).

Unfortunately, Hinson suffered yet another work-related injury in Spring of 2021. On April 20, 2021, Hinson went to Hyundai's medical clinic and reported weakness and pain in her right arm and wrist. (Doc. 28-1 at 5; doc. 28-24 (First Report of Injury to State of Alabama)). Hyundai relieved Hinson of all work-related duties, and Hyundai sent her home with instructions not to use her right arm. She was directed to follow up with Hyundai's medical clinic prior to the start of her next shift. (Docs. 28-25; 28-6; 31-1). Hinson arrived at work for her next scheduled shift and could not use her right arm. Accordingly, Hyundai sent her home. (Doc. 28-29). Hyundai's Duty Disposition Report indicates that the restriction was from April 26, 2021 to May 10, 2021 with "No Use of RT arm until MRI" written under the "Category Description." (Doc. 28-29).

Concurrently, Hinson's group leader told her to get an updated restriction for stepping on and off the AGV for her new team leader. (Doc. 28-1 at 5). Hinson complied by delivering a note from her neurologist on April 27, 2021, which stated that "due to her Neurological Conditions, She should Avoid Repetitive stepping up and

down," (doc. 29-1).    Hyundai sent Hinson home with instructions to see her doctor regarding the note. (Doc. 29-5; doc. 29-6).   Hinson returned the next day with a similar note, which was also rejected by Hyundai. (Doc. 28-1 at 6; *see also* doc. 31-8).

Hinson had her MRI on April 27, 2021.   Clinic notes from that day indicate that the MRI was reviewed and that Hinson was to return to work. (Doc. 29-17 at 1–2).   However, her other restrictions prevented her return to work. (*See* doc. 29-2).

In the meantime, Hinson brought in two subsequent notes which were rejected by Hyundai:

- **April 29, 2021**: Hinson made another attempt at providing a note from her doctor. Again, she was sent home.  But this time she was told the note needed to include a frequency and an end date. (Doc. 29-7).

- **May 10, 2021**: Hinson brought a note with revisions, which stated: "She should completely avoid stepping up and down on the AGV equipment, this aggravates her condition. This should be considered during time frame of 5-3-2021 until next consultation on 5-25-2021." (Doc. 29-10).  Brandon Evans, who is part of the Safety Department, rejected the note and said it needed clarifications and "unable to list process as a[] restriction." (Doc. 29-11).

Importantly, an internal email from Kyle Sampsell, a prevention program manager at Hyundai, on May 13, 2021 noted to employees that a "physician cannot dictate processes a [Team Member] works" when listing the various notes Hinson brought in during April and May of 2021. (Doc. 29-13).

Turning back to Hinson's shoulder issues, Dr. Hussein Turki, Hyundai's worker's compensation doctor, reviewed the MRI of Hinson's right arm and wrist on May 14, 2021. (Doc. 29-21).  Dr. Turki diagnosed Hinson's problem as overuse and put her on therapy for the next month, restricted her lifting to 5 pounds, and prescribed medications.  He projected Hinson could be released to return to work without any arm restrictions on June 13, 2021. (Doc. 29-12).  Hyundai excluded Hinson from the workplace on the grounds that there was no accommodation which would allow Hinson to perform her job. (Doc. 29-12 at 2; doc. 31-6).

The next day, May 14, 2021, Dr. Dexter Walcott, the Hyundai doctor who had treated Hinson's previous work-related injury to her left upper extremity, re-examined her.[2] (Doc. 28-1 at 7).  Dr. Walcott determined that Hinson should have no overhead use of her left shoulder until June 10, 2021. (Docs. 29-14 & 29-15).  Hyundai, per Kristine Ziglar, determined that this was a work-related injury and directed Hinson to go home because there were no accommodations available that would not involve overhead use of her left shoulder. (*See* docs. 29-14 & 29-15).

On June 8, 2021, Hinson was examined by her neurologist, who completed the Non-Work Related Restriction Form provided by Hyundai.  On this form, the doctor captured all of the restrictions which she believed could be applicable to Hinson as of that date, including overhead restrictions.  The Neurologist's note stated these restrictions would be

---

[2] In her affidavit, Hinson states that this exam occurred on May 13, 2021 (doc. 28-1 at 7), but other documents have the exam as occurring on May 14, 2021 (*see* doc. 40 at 22–23).

temporary until July 14, 2021,[3] and suggested, but did not prescribe, a full capacity examination. (*See* doc. 29-19).  Hinson delivered this form to Hyundai's medical clinic. Upon receiving this form, Hyundai determined that it could not accommodate Hinson's restrictions. (Docs. 29-20 & 29-21).

Hyundai sent Hinson an "off-base" letter dated July 15, 2021 in which they asked Hinson to provide documentation by July 29, 2021 showing that her absences from April 27, 2021, through July 15, 2021, had been approved. (Doc. 30-2).  A week later, Hyundai representatives Keith Boling and Will Ware met with Hinson. (Doc. 28-1 at 8).  Boling told her that according to her restrictions, he believed her condition had "worsened" and that there were no jobs for her at Hyundai. (Doc. 25-1 at 33).

Hinson filed a charge with the Equal Employment Opportunity Commission ("EEOC") on August 17, 2021.  Hinson checked the "Disability" box and identified the earliest "Date(s) Discrimination Took Place" as April 27, 2021, and the "latest" date as "ongoing" in her EEOC complaint. (Doc. 1-1 at 2).  Additionally, she checked the "Continuing Action" box on the EEOC complaint form and provided a narrative which stated in part, "Hyundai has refused to allow me to return to work and has not given me clear instructions as to what information they need in order for me to return to work." (*Id.* at 2–4).

Two days later, Hinson was terminated pursuant to Hyundai's "Serious Misconduct Policy" with chronic absences cited as the reason. (Doc. 30-4).  Delecia McIntyre,

---

[3] The Court will address contentions made in briefs and at oral argument regarding this statement in greater detail below.

Hyundai's HR Talent Administration Manager, as part of the Employment Review Committee ("ERC"), was ultimately the decisionmaker who decided to terminate Hinson. (Doc. 25-22 at 11–21).  She relied solely on a summary packet (doc. 30-3), which Ta'lon Brown prepared. (*Id.*).  The summary packet contained no information regarding Hinson's medical conditions or the reasons for her absences. (*See* doc. 30-3).

Based on these events, the present action was filed on September 9, 2022. (Doc. 1). Hinson brought two counts against Hyundai under the ADA, as amended by the ADAAA: failure to accommodate (Count I) and unlawful termination (Count II).

## IV.  DISCUSSION

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to ... *discharge of employees* ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (emphasis added). "Under the ADA unlawful discrimination includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability' unless doing so 'would impose an undue hardship' on the employer." *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023) (quoting 42 U.S.C. § 12112(b)(5)(A)).

"An individual is 'qualified' if 'with or without reasonable accommodation, [she] can perform the essential functions of the employment position.'" *Id.* (quoting 42 U.S.C. § 12111(8)).  In assessing whether a particular function is "essential," an employer's judgment is afforded substantial weight, but is not dispositive. *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1182 (11th Cir. 2019) (citing various cases) (*Lewis II*).

The ADAAA defines "disability" as including both (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" or (2) "being regarded as having such an impairment." 42 U.S.C. § 12102(1).  The ADAAA further provides that an individual is "regarded as" disabled if she "establishes that ... she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

**A.   Motion to Exclude (Doc. 41) and Motion to Strike (Doc. 43)**

The Court first turns to Hinson's motion to exclude (doc. 41) and Hyundai's motion to strike (doc. 43).

### 1.   *Hinson's Motion to Exclude (Doc. 41)*

Hinson seeks to exclude Keith Boling's affidavit (doc. 25-25) based on the contention, among others, that "Boling's affidavit does not accurately reflect his personal knowledge of the items contained therein." (Doc. 41 at 1).  However, the Court's decision does not rely upon the portions of Boling's affidavit testimony which Hinson finds problematic.  Accordingly, for that reason, Hinson's motion to exclude (doc. 41) is due to be DENIED as moot.

### 2.   *Hyundai's Motion to Strike (Doc. 43)*

As to Hyundai's motion to strike (doc. 43), the Court will address in turn each set of documents which Hyundai seeks to strike.  For the reasons that follow, Hyundai's motion to strike (doc. 43) is due to be DENIED.

11

### a.     Hinson's Affidavit (Doc. 28-1)

Hyundai first contends that Hinson's affidavit should be disregarded because Dana Anderson is the individual named by the Notary Public as claiming the contents of the affidavit (doc. 43 at 3; doc. 28-1 at 1).  However, a review of the entire affidavit reveals that this is a harmless clerical error.   To begin with, right above the paragraph in controversy, the document is entitled "AFFIDAVIT OF MONICA SCOTT HINSON." (Doc. 28-1 at 1) (capitalization in original).   Further, Hinson appropriately signed the affidavit under the penalty of perjury with her name in clear typeface right below the signature. (*See id.* at 9).   Therefore, the document, when taken as a whole, makes clear to any reasonable reader that the inclusion of Dana Anderson's name was a harmless clerical error.

Next, Hyundai states that Hinson's affidavit lacks relevance due to the timing and contents of her EEOC charge.  For the reasons stated further in this Memorandum Opinion and Order, Hinson's testimony regarding her discharge claim is relevant.

Finally, Hyundai states that portions are due to be stricken as inadmissible because they are irrelevant or immaterial. (Doc. 43 at 4–11).  In doing so, Hyundai makes factual and legal contentions which are more appropriate for trial or their brief in support of summary judgment, not a motion to strike evidence.

For the forgoing reasons, the Court will not strike Hinson's affidavit (doc. 28-1).

### b.     Doc. 28-2: Deposition of Keith Boling

Hyundai seeks to strike portions of doc. 28-2, the deposition of Keith Boling, for containing hearsay and not being best evidence. (Doc. 43 at 11).  Hyundai failed to identify

and explain said portions which they object to in their motion, simply asserting that "[p]ortions are hearsay," and "[p]ortions . . . are not the best evidence." (*Id.*).  The Court declines to strike doc. 28-2 on these ephemeral grounds.

### c.   Docs. 29-1, 29-3, 29-4, and 29-9

Hyundai moves to strike portions of docs. 29-1, 29-3, 29-4, and 29-9.  However, docs. 29-3, 29-4, and 29-9 were not relied upon by the Court in reaching the legal conclusions in the Court's Memorandum Opinion and Order.  Accordingly, Hyundai's request to strike these documents is due to be denied as moot.

Hyundai seeks to strike doc. 29-1, a physician note written on behalf of Hinson, on hearsay, lack of foundation, authenticity, and relevance grounds. (Doc. 43 at 12–13).  Once again, Hyundai's arguments weigh evidence and make factual contentions inappropriate for a motion to strike at the summary judgment stage.  However, the Court will directly address Hyundai's hearsay arguments.

Hyundai argues that the portion of Hinson's physician note in which the doctor states Hinson requested she write the note is hearsay. (*Id.*).  The comment in controversy is likely subject to a hearsay exception or not hearsay at all, but even if it were not, the Court may "consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)).  Here, the comment by the physician that Hinson requested that she write the note meets this standard.  Therefore, the Court will not strike doc. 29-1.

####            d.       *Doc. 32-1: Hyundai's EEOC Position Statement*

Hyundai seeks to strike their EEOC position statement (doc. 32-1)[4] on multiple grounds, including that "[d]ocuments of this kind are regularly excluded as not evidence at all." (Doc. 43 at 13).  As the Court will fully explain in a later section, the Court will not strike doc. 32-2 as it is relied upon by the Court simply to demonstrate the scope of the EEOC investigation rather than substantive reasons.  Additionally, Hyundai fails to explain its other bases, like hearsay, for striking the document.

####            e.       *Doc. 28-2: Deposition of Keith Boling (Labeled as Doc. 28-1 in the Motion)*

Hyundai labels these arguments as seeking to strike doc. 28-1, but context clues indicate to the Court that Hyundai is referring to doc. 28-2.  If Hyundai is referring to doc. 28-1, then it can refer to the Court's previous declination of Hyundai's invitation to strike doc. 28-1.  Regardless, the Court similarly declines to strike doc. 28-2 for the second time. First, Hyundai once again states that "[p]ortions are hearsay" without identifying said portions.  The Court simply cannot rule on such an objection unadorned with any semblance of explanation.  Second, Hyundai charges that certain portions of the document contain speculation on the part of Boling.  However, the Court does not rely upon these statements in rendering its decision; thus, Hyundai's objection on speculation grounds is due to be denied as moot.

---

[4] Hyundai mistakenly labels its EEOC statement as doc. 32-2 in their motion; it is doc. 32-1.

   **f.**  ***Docs. 28-3 through 28-11, 29-12, 29-16, 29-17, 30-1, 30-10, 30-14***

   ***through 30-19, 31-1 through 30-4, 31-6, 31-7, 31-9 through 31-12, 31-17,***

   ***and 31-22***

Hyundai seeks to strike the above referenced documents on the grounds that portions are not properly authenticated, hearsay, and not relevant.  The motion does not identify the specific portions which Hyundai finds problematic. (Doc. 43 at 14–15).  To start, the Court did not rely upon docs. 28-3, 28-4, 28-6, 30-1, 30-10, 30-14 through 30-19, 31-2 through 31-4, 31-7, 31-9 through 31-12, and 31-17 in reaching its conclusions contained in this Memorandum Opinion and Order.  As a result, Hyundai's proposal to strike these documents is due to be denied as moot.

The Court will not strike the remaining documents for two reasons.  First, Hyundai does not explain their contentions on authentication, hearsay, or relevance as it pertains to certain documents.  For instance, the entirety of Hyundai's argument as to why the above-referenced documents should be stricken for hearsay is: "Portions of the documents are hearsay." (Doc. 43 at 14).  It is not for the Court to guess what Counsel meant by their single sentence statements seeking to strike a lengthy list of documents consisting of hundreds of pages.  Second, the remaining documents upon which the Court relies are relevant to issues before the Court to the extent cited to in this Memorandum Opinion and Order.

After finding various objections to either be moot, unclear, or lacking in merit, Hyundai's motion to strike (doc. 43) is due to be DENIED.

**B.**     **Exhaustion of Administrative Remedies**

Before the Court begins its analysis of Hinson's two counts, the Court addresses Hyundai's arguments regarding Hinson's alleged failure to exhaust her administrative remedies.    Specifically, Hyundai argues that Hinson's failure to amend her EEOC complaint or file a new complaint with the EEOC following her discharge from Hyundai forecloses her ability to raise her unlawful termination count (Count II). (Doc. 26 at 17). However, such an argument ignores the fact that though "allegations of new acts of discrimination are inappropriate[,] ... the scope of an EEOC complaint should not be strictly interpreted," and a plaintiff can bring a claim if the claim amplifies or clarifies an allegation in the EEOC complaint. *Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1279–80 (11th Cir. 2004).   Here, in her August 17, 2021 EEOC complaint, Hinson checked the "Disability" box and identified the earliest "Date(s) Discrimination Took Place" as April 27, 2021, and the "latest" date as "ongoing." (Doc. 1-1 at 2).   Additionally, she checked the "Continuing Action" box on the EEOC complaint form and provided a narrative which stated in part, "Hyundai has refused to allow me to return to work and has not given me clear instructions as to what information they need in order for me to return to work." (Doc. 1-1 at 2–4).   Soon thereafter Hinson was terminated with chronic absences cited as the reason. (Doc. 30-4).

This information points to Hinson's termination as being an amplification of the allegations in her EEOC complaint.   Notably, Hyundai presented arguments regarding Hinson's termination in its response to the EEOC complaint (doc. 32-1 at 8–9), which clearly indicates that Hinson's termination was part of the EEOC's investigation, and that

16

Hyundai understood it to be.  And while Hyundai cites case law to say Hyundai's EEOC statement should not be considered, the EEOC statement here is not being used for substantive reasons but to show the scope of the EEOC investigation and that Hyundai considered Hinson's termination to be a part thereof. *See Kinsey v. Enter. Leasing Co.*, 2007 WL 9711502, at *10 (N.D. Ala. May 18, 2007).  The Court finds that Hinson properly exhausted her administrative remedies at the EEOC prior to filing the complaint in this action.

## C.     Failure to Accommodate

"To establish a prima facie claim for failure to accommodate, [Hinson] must show that (1) she is disabled; (2) she was a 'qualified individual' at the relevant time, meaning she could perform the essential functions of the job in question with or without reasonable accommodations; and (3) she was discriminated against by way of the defendant's failure to provide a reasonable accommodation." *Solloway v. Clayton*, 738 F. App'x 985, 987 (11th Cir. 2018) (per curiam) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)).

To trigger an employer's duty to provide a reasonable accommodation, a plaintiff must make a specific demand for such an accommodation. *Adigun v. Express Scripts, Inc.*, 742 Fed. Appx. 474, 476 (11th Cir. 2018) (citing *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999)).  This demand "need only identify a statutory disability and explain generally how a particular accommodation would assist her." *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1336 (11th Cir. 2022), *cert. denied sub nom. Owens v. Georgia Governor's Off. of Student Achievement*, 143

17

S. Ct. 2465 (2023).[5]   Thus, an employer is not required to accommodate a perceived disability.  Further, "[w]hen an employee requests an accommodation, it may be necessary for an employer and the employee to engage in an informal, interactive process to determine whether and which reasonable accommodations are feasible." *Umbarger v. Ga. Dep't of Revenue*, 2007 WL 9700751, at *21 (N.D. Ga. Mar. 30, 2007), *aff'd*, 262 F. App'x 982 (11th Cir. 2008) (per curiam) (citation and internal marks omitted).[6]

In the Eleventh Circuit, demonstrating a requested accommodation is reasonable requires that "an employee put her employer on notice of the disability for which she seeks an accommodation and provide enough information to allow an employer to understand how the accommodation would address the limitations her disability presents." *Owens*, 52 F.4th at 1334.  Other circuits address this issue in a similar manner:

> The Tenth Circuit, for example, has explained that a plaintiff "need not use magic words," but "should provide enough information about his or her limitations and desires [ ] to suggest at least the possibility that reasonable accommodation may be found in a reassignment job within the company." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999). Similarly, the Third Circuit has held that a plaintiff making a failure to accommodate claim must have provided "enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation."

*Adigun v. Express Scripts, Inc.*, 742 F. App'x 474, 476 (11th Cir. 2018).

---

[5] The Court notes that though this is a Rehabilitation Act case, the standards for ADA cases are the same in the context of employment discrimination. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000)).

[6] Though the Court is not bound by district court cases, the Court nonetheless finds the case persuasive. Similarly, the Court will cite caselaw throughout this Memorandum Opinion and Order which the Court finds persuasive despite it not being binding upon the Court.

As clarified at oral argument, Hinson alleges that Hyundai failed to accommodate: (1) her shoulder issues as they relate to overhead work; and (2) her back and neurological issues, which encompass several maladies.  The Court will analyze each in turn.

### 1.  The Overhead Restrictions

The Court will first address the overhead accommodation issues.  As a starting point, Hinson must demonstrate that she is a "qualified individual" under the ADA which means she could perform the essential functions of the job in question with or without reasonable accommodations. *Solloway*, 738 F. App'x at 987.  As applied to Hinson's case, it is undisputed among the parties that Hinson would need to be able to perform at least four processes per shift to satisfy this criterion. (*See* doc. 45 at 7; doc. 40 at 39).  Hinson was trained on a total of nine processes. (Doc. 30-8 at 1).

Hinson provided a note to Hyundai which indicated restrictions on overhead work. (Doc. 29-19).  Though Hinson stated in her deposition that she was still able to perform processes 3L, 3R, 6L, 6R, 7, and 1 with the June 8th overhead restrictions (doc. 25-1 at 33), she does not provide any evidence of such beyond her own conclusory, subjective beliefs.  In fact, Hyundai's internal descriptions of these processes indicate that overhead reaching was either "constantly" or "frequently" called for. (*See* doc. 25-25).  The same document also indicates that many of these processes required overhead work. (*Id.*).  The Eleventh Circuit has historically afforded substantial weight to the employer's job description for these types of assessments. *See Lewis II*, 934 F.3d at 1182 (citing various cases).  Moreover, Bobbie Ford, a production supervisor at Hyundai, provided an affidavit with picture attachments and deposition testimony which further supports these findings in

Hyundai's internal documents. (*See* doc. 25-28 at 2–3, 40–47; doc. 25-20 at 21–23). Defeating such specific evidence at the summary judgment stage, even as the non-movant, requires more than providing conclusory subjective beliefs in deposition testimony. *See Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).

The number of processes which do not require overhead work in some form and for which Hinson is trained is two. (Doc. 25-34 at 3; *see also* doc. 25-28 at 2–3, 40–47; doc. 25-20 at 21–23). Falling short of the four processes requirement, Hinson would not be a "qualified individual" under the ADA and therefore a failure to accommodate claim in connection with the overhead restrictions cannot be sustained on this record.

### 2.  *Accommodations Associated with Hinson's Back and Neurological Issues*

The Court now turns to Hinson's failure to accommodate claim as it relates to her back and neurological issues. Hyundai concedes that had the restrictions only affected the two processes associated with the AGV, then Hinson could have performed at least four processes on a shift (doc. 45 at 51) and would accordingly be a "qualified individual" under the ADA. Additionally, the Court will credit Hinson's arguments on the issue (doc. 40 at 58) to the extent that the Court will assume without deciding that Hinson has a disability for purposes of the ADA.

Without repeating every detail, the Court takes note of the extensive back and forth between Hyundai, Hinson, and Hinson's healthcare providers between April and June of 2021 regarding accommodations tied to Hinson's back and neurological issues. Importantly, it is undisputed that the notes provided by Hinson to Hyundai during this time period gave process restrictions rather than physical restrictions. (*See* doc. 40 at 20–22).

And in that sense, the notes were deficient because Hyundai was unable to apply such accommodation requests to their workplace.  For example, a factory could have a variety of stepping heights throughout the factory floor.  If a physician gave a general restriction of "no stepping up on the platform," then the employer would not know to which platform the restriction refers.  It could refer to the platform with a two-inch step, an eight-inch step, or both.  Indeed, Hinson should have understood this following a similar episode in 2015-2016 when Hyundai asked for physical limitations rather than process limitations, and Hinson complied.  Moreover, dictating process restrictions to employers deprives them of the opportunity to tailor accommodations to the needs of their workplace through the interactive process—a process which is beneficial to employees and employers alike.

Put another way, while Hinson was not required to use "magic words," she did have to "put her employer on notice of the disability for which she seeks an accommodation and provide enough information to allow [Hyundai] to understand how the accommodation would address the limitations her disability presents." *Owens*, 52 F.4th at 1334.  And even though Hyundai accepted deficient notes at certain points throughout Hinson's employment, such a fact does not dispense with this requirement described by the Eleventh Circuit.  So, without specifically addressing the physical limitations, *i.e.* stepping height limitations, Hyundai could not understand how the proposed accommodation would address the limitations that Hinson's disability presents.  Thus, the accommodation requests in the record from late April until early June 2021 were unreasonable.

The string of deficient notes, however, came to an end on June 8, 2021.  On that day Hinson provided a note regarding her neurological restrictions which satisfied Hyundai's

physical limitations requirement.[7] (*See* doc. 29-19; doc. 45 at 27 n.4).  As previously discussed, this restriction form from Hinson's healthcare provider also had overhead restrictions which could not be accommodated.  Consequently, Hinson could not be accommodated at all due to the overhead restrictions which were in place until at least July 14, 2021, per the terms of the physician's note. (*See* doc. 29-19).

Construing the evidence in the light most favorable to the non-movant (Hinson), the restrictions associated with the June 8, 2021 note expired on July 14, 2021. (*See* doc. 29-19; doc. 40 at 38).   Specifically, both the overhead accommodations *and* the accommodations associated with the back/neurological issues in the June 8, 2021 note expired on July 14, 2021 as the expiration date applied to the note as a whole rather than particular restrictions. (*See id.*).  As a result, there appears to be no acceptable note in the record from which Hyundai would be obligated to accommodate Hinson on her back/neurological issues following the expiration of the June 8, 2021 physician's note. Accordingly, the failure to accommodate claim in connection with Hinson's neurological/back issues cannot be sustained.

Due to Hinson not being a "qualified individual" in connection with her shoulder issues and her failure to demonstrate a time period in which she was a "qualified individual" with a reasonable accommodation request in connection with her

---

[7] The parties seemingly stipulate to the fact that the June 8, 2021 note (doc. 29-19) is an acceptable physician's note despite the fact that it does not include a specific stepping height restriction.  Indeed, both parties stated at oral argument that the June 8, 2021 note was valid for Hinson's restrictions.  And counsel for Hyundai specifically stated that the June 8, 2021 note included appropriate physical limitations rather than improper process restrictions.  Therefore, the Court will accept this fact as stipulated to by the parties.

neurological/back issues, the failure to accommodate claim (Count I) is due to be dismissed.

**D.    Unlawful Termination**

The Court now turns to Hinson's claim of unlawful termination under the ADA against Hyundai.  Hinson alleges that Hyundai terminated her because of her actual disability and because it regarded her as having a disability.

### 1.    *McDonnell Douglas Analysis*

Hinson does not present direct evidence of discrimination but instead relies upon circumstantial evidence.  "When a plaintiff [in ADA discrimination cases] seeks to satisfy her burden with circumstantial evidence, we evaluate that evidence under the familiar *McDonnell Douglas* burden-shifting framework that governs Title VII employment-discrimination claims." *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215 (11th Cir. 2021) (citing *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999)). Under the *McDonnell-Douglas* framework, Hinson must first demonstrate a *prima facie* case of intentional discrimination under the ADA.  And if Hinson demonstrates this *prima facie* case, then "the burden of production shifts to [Hyundai] to articulate a legitimate, nondiscriminatory reason for its actions." *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012) (citation omitted).  Once Hyundai articulates a legitimate, nondiscriminatory reason for Hinson's termination, then Hinson must demonstrate that the reasons proffered were merely pretext for discrimination. *Id.*  Importantly, temporal-proximity arguments by themselves "generally cannot prove that an employer's proffered reasons are pretextual."

*Todd*, 998 F.3d at 1219 (citing *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1137 n.15 (11th Cir. 2020) (en banc) (collecting cases)).

To establish a *prima facie* case of unlawful termination under the ADA, Hinson must show that: (1) she is disabled; (2) she was a "qualified individual" at the relevant time, meaning she could perform the essential functions of the job in question with or without reasonable accommodations; and (3) she was discriminated against because of her disability, which resulted in her termination. *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007).

Once more, construing the evidence in the light most favorable to Hinson as the non-movant, the restrictions associated with the June 8, 2021 physician's note expired on July 14, 2021. (*See* doc. 29-19; doc. 40 at 38).  Accordingly, a jury could conclude that Hinson was free of restrictions upon that expiration and, as a result, able to perform the essential functions of her job *without* an accommodation.  Thus, Hinson would be a "qualified individual" from July 15, 2021 until her termination.

By the same token, Hinson provides insufficient evidence to demonstrate that she provided Hyundai with documentation of an actual disability from July 15, 2021 until her termination.  However, Hinson also alleges that Hyundai terminated her because of a "perceived" limitation (doc. 40 at 55), which would fall into a "regarded as" claim under the ADA.  To that end, it is worth examining the evidence regarding Hinson's last in-person meeting with Hyundai representatives prior to her termination.

Hinson stated that she met with Hyundai representatives Keith Boling and Will Ware on July 22, 2021. (Doc. 28-1 at 8).  Counsel for Hyundai strongly contested the

24

contents of this meeting at oral argument, but the evidence in the record tells a different story, and counsel's arguments are not evidence. *See United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009) ("statements and arguments of counsel are not evidence") (quoting *United States v. Smith*, 918 F.2d 1551, 1562 (11th Cir. 1990)).  For instance, Boling does not recall the details of the meeting (doc. 28-2 at 11), but Hinson said in her deposition that Boling told her that according to her restrictions, he believed her condition had "worsened" and that there were no jobs for her at Hyundai (doc. 25-1 at 33).  Since Hinson is providing specific testimony regarding the meeting and Boling cannot recall any details, their testimony does not conflict and as the non-movant these facts must be construed in the light most favorable to Hinson.  With Hinson's account of the July 22, 2021 meeting essentially uncontested, a jury is entitled to resolve the factual question of whether Hyundai perceived Hinson as having a physical impairment. *See* 42 U.S.C. § 12102(3)(A).

In sum, a reasonable juror could conclude that Hinson was "disabled" as defined by the ADA[8] and a "qualified individual" from July 15, 2021 until her termination.  Now, the Court turns to the final element of the *prima facie* case: whether Hinson was discriminated against *because of* her disability, which resulted in her termination.  And it is here that Hinson must demonstrate through a comparator analysis that "she was treated differently from other individuals with whom she was similarly situated in all material respects." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1217–18 (11th Cir. 2019) (en banc) (*Lewis I*).

---

[8] The ADA's definition of "disabled" includes being regarded as having a disability. 42 U.S.C. § 12102(1).

The parties acknowledge that Hinson has no comparators. (Doc. 40 at 51; doc. 26 at 20).  As such, Hinson's unlawful termination count fails under the *McDonnell Douglas* framework at step one since Hinson cannot establish a *prima facie* case. *See Lewis I*, 918 F.3d at 1218 ("[W]e hold, as an initial matter, that a meaningful comparator analysis must be conducted at the *prima facie* stage of *McDonnell Douglas*'[] burden-shifting framework . . .").

### 2.   *Convincing Mosaic Analysis*

Alternatively, Hinson may also establish a case of unlawful termination under the ADA by presenting a "convincing mosaic" of circumstantial evidence which would allow a jury to infer intentional discrimination. *Change v. Midtown Neurology, P.C.*, 2021 WL 2483368, at *21–22 (N.D. Ga. Feb. 3, 2021), report and recommendation adopted, 2021 WL 2492470 (N.D. Ga. Mar. 26, 2021), *aff'd*, 2022 WL 2352339 (11th Cir. June 29, 2022) (discussing various district court cases utilizing the convincing mosaic paradigm in ADA cases).  "A convincing mosaic of circumstantial evidence allowing the inference of discrimination may be shown by suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent may be drawn; systemically better treatment of similarly situated employees; and that an employer's justification is pretextual." *Id.* at *21.  However, the Eleventh Circuit has cautioned that even under the convincing mosaic framework, an inference of intentional discrimination is not allowed unless "something links the action to the employee's" protected class. *Turner v. Florida Prepaid Coll. Bd.*, 522 Fed. App'x. 829, 833 (11th Cir. 2013) (per curiam).  Moreover, the

convincing mosaic paradigm does not negate the requirement that a Plaintiff demonstrate that she is a "qualified individual" under the ADA. *Change*, 2021 WL 2492470, at *22.

Here, a reasonable juror, through a variety of evidence and facts, could find a "convincing mosaic" from which to find intentional discrimination against Hinson on the part of Hyundai.  As previously described, Hinson has a history of shoulder injuries which precluded her attendance from the workplace and required further accommodations upon her return.  These shoulder issues flared up again during the relevant time period in 2021.  And, as described by Hyundai's counsel at oral argument, attendance is very important to Hyundai and its operations in the facility where it employed Hinson.  Following the June 8, 2021 physician's note, Hyundai determined it could not accommodate overhead restrictions associated with Hinson's shoulder issues.  Then, with Hinson potentially facing an additional surgery on her shoulders, which likely would have required further absences from work and a gradual return to work, Hyundai sent Hinson an "off-base" letter on July 15, 2021.  This letter came just one day after the specified expiration date of Hinson's June 8, 2021 restrictions.  And, as discussed already, Hyundai representatives met with Hinson seven days later on July 22, 2021, where one representative stated that he believed Hinson's condition had "worsened."   Though Brown disclaims any knowledge of Hinson's conditions playing a role in the discharge decision or discussing the July 22, 2021 meeting with Boling or Ware (doc. 25-26 at 4), Brown simply funneled information gathered from around the organization into a summary report for McIntyre and the ERC (*see id.* at 2–4).  This does not preclude the finding that information was provided to Brown regarding

Hinson's absences in an effort to terminate her employment on the basis of her "regarded as" disability.

Strung together, these elements paint a mosaic from which a reasonable juror could find that Hyundai regarded Hinson as disabled and terminated her on that basis in violation of the ADA.

For the foregoing reasons, Hyundai's motion for summary judgment is due to be DENIED in part to the extent that Hinson's claim of unlawful termination (Count II) will proceed to trial for a jury to determine whether Hyundai regarded Hinson as disabled and undertook adverse action on that basis which resulted in Hinson's termination from Hyundai.

## V.  CONCLUSION

For the reasons discussed above, it is hereby ORDERED as follows:

1.      Hyundai's motion for summary judgment (doc. 24) is GRANTED in part to the extent that Hinson's failure to accommodate claim (Count I) is DISMISSED.

2.      Hyundai's motion for summary judgement (doc. 24) is GRANTED in part to the extent Hinson claims she was terminated because of an actual disability and that claim is DISMISSED.

3.      Hyundai's motion for summary judgment (doc. 24) is DENIED in part to the extent that Hinson's claim of unlawful termination based on a perceived disability (Count II) will proceed to trial for a jury to determine whether Hyundai regarded Hinson as disabled and undertook adverse action on that basis which resulted in Hinson's termination.

4.      Hinson's motion to exclude (doc. 41) is DENIED as moot.

28

5.      Hyundai's motion to strike (doc. 43) is DENIED.

Done this 7th day of February, 2024.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE